# Composite Exhibit "A"

# NOTE

September 24. 2003
[Date]

Jersey city
[City]

New Jersey
[State]

299  EGE  AVENUE. JERSEY CITY. NJ 07304

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 165,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Fleet National Bank

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          4.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 01st      day of each month beginning on November 1st. 2003      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on October 1st. 2018      . I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 100 Federal Street Boston. MA 02110
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1294.10

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP-5N (0207).01          **Form 3200 1/01**

VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3          Initials: _____

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Henry Bell                       -Borrower

_____ (Seal)
                                 -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE

Cendant Mortgage Corporation
Shanique James, Assistant Vice President

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

PAY TO THE ORDER OF
Cendant Mortgage Corporation
3000 Leadenhall Road
P.O. Box 5449
Mount Laurel, NJ 08054
WITHOUT RECOURSE

Fleet National Bank
Shanique James, Assistant Vice President

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*

 -5N (0207).01

Page 3 of 3

Form 3200 1/01

# SIGNATURE/NAME AFFIDAVIT

DATE: September 24, 2003

LOAN #: ▮▮▮▮▮▮

BORROWER: Henry Bell

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must <u>exactly</u> match signatures on the Note and Mortgage or Deed of Trust.)

Henry Bell
_____          _____
(Print or Type Name)                              Signature

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

Henry Bell Jr
_____          _____
(Print or Type Name)                              Signature

_____          _____
(Print or Type Name)                              Signature

_____          _____
(Print or Type Name)                              Signature

_____          _____
(Print or Type Name)                              Signature

and that                                                              are one

and the same person.

State/Commonwealth of NJ
County/Parish of Hudson

Subscribed and sworn (affirmed) before me
this 24th              day of September            , 2003
                                                   _____
                                                   Notary Public in and for
                                                   the State/Commonwealth of NJ
                                                   County/Parish of Hudson
                                                   My Commission Expires:

VMP-304 (0103)                VMP MORTGAGE FORMS - (800)521-7291                3/01

MICHELE A. BISHOP
A Notary Public of New Jersey
My Commission Expires 08-09-2004

9/23/2003 2:34 PM

Return To:

Fleet National Bank
2001 Bishops Gate Boulevard
Mount Laurel, NJ 08054

**RECORD & RETURN**
**ST. GEORGE TITLE AGENCY**
**1780 GALLOPING HILL ROAD**
**KENILWORTH, NEW JERSEY 07033**

Prepared By:
Donald Labranche, Fleet
National Bank
50 Jordan Street East
Providence, RI 02914

——————[Space Above This Line For Recording Data]——————

# MORTGAGE

MIN

000031275
RECEIVED
AND
RECORDED
MTG

01/16/2004  09:15A
BARBARA A. DONNELLY
HUDSON COUNTY
REGISTER OF DEEDS
Receipt No. 150665

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated September 24, 2003
together with all Riders to this document.
**(B) "Borrower"** is    Henry Bell JR.

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3031 1/01

-6A(NJ) (0005).01

Page 1 of 15          Initials:

VMP MORTGAGE FORMS - (800)521-7291

BK=10925  PG=00184

**(D) "Lender"** is Fleet National Bank

Lender is a National Association
organized and existing under the laws of United States of America
Lender's address is 100 Federal Street Boston, MA 02110

**(E) "Note"** means the promissory note signed by Borrower and dated September 24, 2003
The Note states that Borrower owes Lender One Hundred Sixty-Five Thousand Dollars and
Zero Cents                                                          Dollars
(U.S. $165,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than October 1st, 2018
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

## Schedule A

**File Number:** ████████

### LEGAL DESCRIPTION

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Jersey City, County of Hudson State of New Jersey:

NOTE: Being Lot(s) 68, Block 1770, Tax Map of the City of Jersey City, County of Hudson.

**NOTE : Lot and Block shown for informational purposes only.**

BK:10925   PG:00186

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following 'described property . located in the                                       COUNTY                    of                              Hudson.                :
                [Type of Recording Jurisdiction]                         [Name of Recording Jurisdiction]
Being more particularly described by a legal description attached hereto.
and made a part thereof. Being the same premises conveyed to
_____ by deed dated _____ and
recorded in the _____ county recorder's office in deed book
_____ page _____. This is a first and paramount
mortgage lien on the above described premises.

Property Account Number:                                        which currently has the address of
299   EGE   AVENUE                                                                [Street]
Jersey city                                      [City], New Jersey 07304       [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower, subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

 -6A(NJ) (0005).0°                    Page 10 of 15                    Initials: [initials]                    Form 3031 1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Section 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BK:10925    PG:00197

Initials: 

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____                _____ (Seal)
                                                                                            -Borrower

_____                _____ (Seal)
                                                                                            -Borrower

_____ (Seal)                  _____ (Seal)
                       -Borrower                                                   -Borrower

_____ (Seal)                  _____ (Seal)
                       -Borrower                                                   -Borrower

_____ (Seal)                  _____ (Seal)
                       -Borrower                                                   -Borrower

BK=10925    PG=00198

VMP-6A(NJ) (0005).01                     Page 14 of 15                        Form 3031 1/01

STATE OF NEW JERSEY, ~~Hudson~~ Union            County ss:

On this 24th       day of September, 2003          , before me, the subscriber,
personally appeared ,

HENRY Bell JR           who, I am satisfied,
is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that
he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein
expressed.

Notary Public

MICHELE A. BISHOP
A Notary Public of New Jersey
My Commission Expires 08-09-2004

BK:10925    PG:00199

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 24th        day of September, 2003        ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to Fleet National Bank

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
299  EGE  AVENUE, JERSEY CITY, NJ 07304

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and
access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens,
blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in
the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to
in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Initials: _____
Page 1 of 4                                                                Form 3170 1/01
VMP-57R (0008)                    VMP MORTGAGE FORMS - (800)521-7291

9/23/2003 2:34 PM

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

-57R (0008)    Page 2 of 4    Initials: _____  Form 3170 1/01

BK: 10925    PG: 00201

9/23/2003 2:34 PM

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

VMP-57R (0008)                    Page 3 of 4                    Initials: _____    Form 3170 1/01

BK=10925    PG=00202

9/23/2003 2:34 PM

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower
HENRY BELL JR

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

VMP®-57R (0008)                    Page 4 of 4                    Form 3170 1/01

BK:10925   PG:00203

```
901003692          02/21/2008 02:04P
RECEIVED           WILLIE L. FLOOD
   AND             HUDSON COUNTY
RECORDED           REGISTER OF DEEDS
  ASN                Receipt No. 430748
```

**Address of Preparer/Record and Return to:**
Prepared By: Pat Knight -800-446-0963
PHH Mortgage Corporation
3000 Leadenhall Road, P.O. Box 5449
Mt. Laurel, NJ 08054

## ASSIGNMENT OF DEED OF TRUST/MORTGAGE

Lenders Loan Number: ▮▮▮▮        **FORECLOSURE DEPARTMENT**
Min #: ▮▮▮▮▮▮▮                          Mers Phone: 1-888-679-6377

FOR VALUE RECEIVED, **Mortgage Electronic Registration Systems, Inc. ("MERS")** as nominee for
Fleet National Bank does by these presents hereby assign and transfer to **PHH Mortgage Corporation,**
**3000 Leadenhall Road, Mt. Laurel, NJ 08054** its successors and assigns, all its right, title and interest in
and to a certain mortgage bearing the date of 09/24/2003
    Original Mortgagor (s): HENRY BELL, JR.,
    Property Address: 299 EOE AVE Jersey city NJ 07304
    Amount: $165000.00
    Recording Date: 01/16/2004    Instrument number: 000031275
    Book number 10925    Page number 00184
And recorded in the office of the recorder of **Hudson** County, State of **NJ** affecting Real Property and more
particularly described in said Mortgage referred to herein.

Signed on 10/22/2007

        Mortgage Electronic Registration Systems, Inc. ("MERS")

        By: _____
            Andrea Kanopka
            Assistant Vice President

State of New Jersey, County of Burlington,
On 10/22/2007, ANDREA P FINKEL before me, a notary public personally appeared Andrea Kanopka to
me known, who being duly sworn, did say that she is the Assistant Vice President of Mortgage Electronic
Registration Systems, Inc. ("MERS") as nominee for Fleet National Bank, and acknowledged to me that
she executed the same in her capacity.

_____
Notary Public

    Andrea P Finkel
  Notary Public of New Jersey
   My Commission Expires
     August 26, 2009

        ANDREA P FINKEL
        Notary Public of New Jersey
        My Commission Expires: 08/26/2009

        **BK:01151    PG:00219**

Hudson County Register 20160411020009990 1/2

c — . 6

Hudson County Register 20160411020009990 Bk: 1221 Pg:969 1/2
04/11/2016 10:25:55 AM ASSIGNMENT
Pamela E. Gardner
Hudson County Register of Deeds
Receipt No. ███████

_____ [Space Above This Line for Recording Data] _____

This Document Prepared By:                    ~~When Recorded Mail To:~~
**DOLORES LAURIA**                            **FIRST AMERICAN TITLE**
**PHH MORTGAGE SERVICES**                     **ATTN: ASGN SERVICES**
**ONE MORTGAGE WAY, MAILSTOP DC**             **1500 SOLANA BLVD, BLDG 6 SUITE 200**
**MOUNT LAUREL, NJ 08054**                    **WESTLAKE, TX  76262**

**Tax/Parcel #:  LOT(S): 68, BLOCK: 1770**

## ASSIGNMENT OF MORTGAGE

For Value Received, **PHH MORTGAGE CORPORATION**, the undersigned holder of a Mortgage (herein
"Assignor") whose address is **ONE MORTGAGE WAY, MOUNT LAUREL, NJ 08054**, does hereby grant,
sell, assign, transfer and convey, unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION, ITS
SUCCESSORS OR ASSIGNS** (herein "Assignee"), whose address is **14221 DALLAS PARKWAY, SUITE
1000, DALLAS, TX 75254**.

A certain Mortgage dated **SEPTEMBER 24, 2003** having been given to secure payment of **$165,000.00**,
which Mortgage is recorded on **JANUARY 16, 2004** in **INSTRUMENT NO. 000031275  BOOK 10925
PAGE 00184 of the official Records of HUDSON COUNTY** , State of **NEW JERSEY**, made and executed
by **HENRY BELL JR**, upon the following property located at **299 EGE  AVENUE, JERSEY CITY, NEW
JERSEY 07304** and situated in **HUDSON COUNTY**, State of **NEW JERSEY**.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the
terms and conditions of the above-described Mortgage.

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way,
#200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments

*WHEN RECORDED, RETURN TO:*
*FIRST AMERICAN TITLE INSURANCE CO.*
*1100 SUPERIOR AVENUE, SUITE 200*
*CLEVELAND, OHIO 44114*
*NATIONAL RECORDING*

Assignment Mortgage ████████████        .     Page 1      Wintrack # ████████████
                                                           PHH Loan ███████, Seterus Loan ███████ and
                                                           FNMA Loan ███████



Hudson County Register 20160411020009990 2/2

_04·04·2016_
Date

**PHH MORTGAGE CORPORATION**

By _Jeanette Munoz_ (Signature)
**JEANETTE MUNOZ**
**ASSISTANT VICE PRESIDENT**

Seal:

_____ [Space Below This Line for Acknowledgments] _____

State of TEXAS
County of TARRANT

I CERTIFY that on _April 4th 2016,_ _Jeanette Munoz_
personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(b) was the maker of the attached instrument;
(c) was authorized to and did execute this instrument _Assignment_ of
_Mortgage_, the entity named in this instrument; and
(d) executed this instrument as the act of the entity named in the instrument

_[signature]_
Notary Public

Printed Name: _Anna M Gomez_
My commission expires: _Oct 19 2016_

ANNA M GOMEZ
My Commission Expires
October 19, 2016

FILED
20160411020009990
04/11/2016 10:25:55 AM
NUMBER OF PAGES : 2
JPISCOPO

Assignment Mortgage ▮▮▮▮▮▮    Page 2    Wintrack # ▮▮▮▮▮
PHH Loan ▮▮▮▮ , Seterus Loan ▮▮▮▮ and
FNMA Loan ▮▮▮▮

Hudson County Register 20180403020008410 1/2

| Hudson County Recording Data Page<br>Diane Coleman<br>Hudson County Register | Official Use Only - Barcode |
|---|---|

| Official Use Only - Realty Transfer Fee |
|---|
| **Hudson County Register 20180403020008410 Bk: 1236 Pg:937**<br>1/2<br>**04/03/2018 12:30:50 PM ASSIGNMENT**<br>**Diane Coleman**<br>**Hudson County, Register of Deeds**<br>**Receipt No** |

| Date of Document: | Type of Document: |
|---|---|
| 2018-03-30 | ASSIGNMENT |

| First Party Name: | Second Party Name: |
|---|---|
| U.S. BANK TRUST N.A., AS TRUSTEE<br>FOR LSF10 MASTER PARTICIPATION<br>TRUST; | FEDERAL NATIONAL MORTGAGE<br>ASSOCIATION; |

| Additional Parties: |
|---|

| THE FOLLOWING SECTION IS REQUIRED FOR DEEDS ONLY | |
|---|---|
| Block: | Lot: |
| Municipality:<br>    Jersey City | |
| Consideration: | |
| Mailing Address of Grantee: | |

| THE FOLLOWING SECTION IS FOR ORIGINAL MORTGAGE BOOKING & PAGING INFORMATION FOR<br>ASSIGNMENTS, RELEASES, SATISFACTIONS, DISCHARGES & OTHER ORIGINAL MORTGAGE<br>AGREEMENTS ONLY | |
|---|---|
| Original Book: | Original Page: |
| 10925 | 00184 |

| HUDSON COUNTY RECORDING DATA PAGE<br>Please do not detach this page from the original document as it contains<br>important recording information and is part of the permanent record. |
|---|

**DISCLAIMER**
A recording officer shall not be liable for differences between the cover sheet or the
electronic synopsis and the document. If descrepencies are found, the entire document will be rejected.

Hudson County Register 20180403020008410 2/2

When Recorded Return To:
Fannie Mae
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

CHL Loan Number ▮▮▮▮
Fannie Mae # ▮▮▮▮
Task ID ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 14221 DALLAS PARKWAY, SUITE 1000, DALLAS, TX 75254, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to U.S. BANK TRUST N.A., AS TRUSTEE FOR LSF10 MASTER PARTICIPATION TRUST, WHOSE ADDRESS IS 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134, ITS SUCCESSSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage in the amount of $165,000.00, dated on 09/24/2003, made by HENRY BELL JR. to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FLEET NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS, and recorded on 01/16/2004, in Mortgage Book 10925 and Page 00184, in the office of the Register of Titles and County Recorder in HUDSON County, New Jersey.

Property is commonly known as: 299 EGE AVE JERSEY CITY
JERSEY CITY, NJ 07304.

Dated this 30th day of March in the year 2018.
FEDERAL NATIONAL MORTGAGE ASSOCIATION, by NATIONWIDE TITLE CLEARING, INC., its Attorney-In-Fact (POA RECORDED: 06/23/2017 INSTR: 20170623010070990 BK: 9211 PG: 826)

_Danielle Burns_
**DANIELLE BURNS**
**VICE PRESIDENT**

FILED
20180403020008410
04/03/2018 12:30:50 PM
NUMBER OF PAGES : 2
JCHAMBERS

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA   COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 30th day of March in the year 2018, by Danielle Burns as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC. as Attorney-in-Fact for FEDERAL NATIONAL MORTGAGE ASSOCIATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_Nicole Shields_
**NICOLE SHIELDS**
**COMM EXPIRES: 08/05/2020**

NICOLE SHIELDS
Notary Public – State of Florida
My Comm. Expires August 5, 2020
Commissio ▮▮▮▮

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
FNMAI▮▮▮▮         , MIN ▮▮▮▮         MERS PHONE 1-888-679-6377
MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 DOCR ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Hudson County Recording Data Page**
Diane Coleman
**Hudson County Register**

*Official Use Only - Barcode*

```
20200611020012480 1/3
06/11/2020 07:32 AM ASSIGNMENT
Bk: 1258  Pg: 94
DIANE COLEMAN
Hudson County, Register of Deeds
Receipt No. ███████
```

*Official Use Only - Realty Transfer Fee*

| Date of Document: | Type of Document: |
|---|---|
| 2020-04-24 | ASSIGNMENT |

| First Party Name: | Second Party Name: |
|---|---|
| HENRY BELL JR; US BANK TRUST NATIONAL ASSOCIATION; LSF10 MASTER PARTICIPATION TRUST; MERIDIAN ASSET SERVICES LLC; | DLJ MORTGAGE CAPITAL INC; |

Additional Parties:

US BANK TRUST NATIONAL ASSOCIATION; LSF10 MASTER PARTICIPATION TRUST; MERIDIAN ASSET SERVICES LLC

### THE FOLLOWING SECTION IS REQUIRED FOR DEEDS ONLY

| Block: | Lot: |
|---|---|

Municipality:

Jersey City

Consideration:

Mailing Address of Grantee:

### THE FOLLOWING SECTION IS FOR ORIGINAL MORTGAGE BOOKING & PAGING INFORMATION FOR ASSIGNMENTS, RELEASES, SATISFACTIONS, DISCHARGES & OTHER ORIGINAL MORTGAGE AGREEMENTS ONLY

| Original Book: | Original Page: |
|---|---|
| 10925 | 184 |

### HUDSON COUNTY RECORDING DATA PAGE
**Please do not detach this page from the original document as it contains important recording information and is part of the permanent record.**

**DISCLAIMER**
A recording officer shall not be liable for differences between the cover sheet or the electronic synopsis and the document. If descrepencies are found, the entire document will be rejected.



Prepared By and Return To:
Maged Farag
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

Loan No: ████████

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR LSF10 MASTER·PARTICIPATION TRUST**, whose address is **13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134**, (ASSIGNOR), does hereby grant, assign and transfer to **DLJ MORTGAGE CAPITAL, INC.**, whose address is **11 MADISON AVENUE 4TH FLOOR, NEW YORK, NY 10010**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **9/24/2003**
Original Loan Amount: **$165,000.00**
Executed by (Borrower(s)): **HENRY BELL JR**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR FLEET NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Mortgage Book/Liber/Volume **10925**, Page **184**
Document/Instrument No: **000031275** in the Recording District of **HUDSON, NJ**, Recorded on **1/16/2004**.
**MUNICIPALITY: CITY OF JERSEY CITY**

Property more commonly described as: **299 EGE AVENUE, JERSEY CITY, NEW JERSEY 07304**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **4/24/2020**

**U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR LSF10 MASTER PARTICIPATION TRUST, BY CALIBER HOME LOANS, INC., ITS ATTORNEY-IN-FACT, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **MARK WATERMAN**                    Witness Name: **BRIANNA DAVIAU**
Title: **VICE PRESIDENT**



FILED
20200611020012480
06/11/2020 07:32 AM
ASSIGNMENT
NUMBER OF PAGES : 3
ACALLIPARI

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of **FLORIDA**
County of **PINELLAS**

On 4/24/2020, before me, **BARBARA BAKA**, a Notary Public, personally appeared **MARK WATERMAN, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR CALIBER HOME LOANS, INC., AS ATTORNEY-IN-FACT FOR U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR LSF10 MASTER PARTICIPATION TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that MARK WATERMAN, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **BARBARA BAKA**
My commission expires: **2/26/2024**

Barbara Baka
NOTARY PUBLIC
STATE OF FLORIDA
Comm#
Expires 2/26/2024

Recording Requested By:
Residential RealEstate Review

When Recorded Return To:

Residential RealEstate Review
Collateral Document Services
3217 S. Decker Lake Drive
Salt Lake City, UT 84119

**CORPORATE ASSIGNMENT OF MORTGAGE**

**Hudson, New Jersey**
**Residential RealEstate Review#:** ▮▮▮▮▮

Date of Assignment:    AUG 1 5 2022
Assignor: DLJ MORTGAGE CAPITAL INC., BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT
at c/o SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119
Assignee: CSMC 2020-RPL2 TRUST at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE
DRIVE, SALT LAKE CITY, UT 84119

Executed By: HENRY BELL JR  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS
NOMINEE FOR FLEET NATIONAL BANK ITS SUCCESSORS AND ASSIGNS
Dated: 09-24-2003 Recorded: 01-16-2004 as Instrument No. 000031275, Book/Reel/Liber 10925, Page/Folio 00184
In the County of Hudson, State of New Jersey.

Property Address: 299 EGE AVENUE, JERSEY CITY, NJ 07304

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency
of which is hereby acknowledged, the said Assignor hereby assigns unto the above named Assignee, the said
Mortgage having an original principal sum of $165,000.00 with interest, secured thereby, and the full benefit of all
the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and
conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

DLJ MORTGAGE CAPITAL INC., BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT
On    AUG 1 5 2022

By: _____
Aliyah Kelsall
Document Control Officer                (This area for corporate seal)
STATE OF Utah
COUNTY OF Saltlake                          ✦ Document Control Officer

On    AUG 1 5 2022    , before me,    Aubrie Jex    , a Notary Public in and for
_Saltlake_ in the State of _Utah_, personally appeared    Aliyah Kelsall  of DLJ MORTGAGE
CAPITAL INC., BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT, personally known to me (or
proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that
by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

_____
Aubrie Jex

AUBRIE JEX
Notary Public State of Utah
My Commission Expires on:
February 23, 2025
Comm. Number: ▮▮▮▮▮

20120130000001050    1/6
01/30/2012 08:20:54 AM  RELEASE
Bk: 867 Pg: 909
Pamela E. Gardner
Hudson County, Register of Deeds
Receipt No ████

After Recording Return To:
**Mortgage Services**
**PO Box 5449**
**Mount Laurel, NJ 08054**

**This Document Prepared By:**
**TUYET TRAN**

**PHH Mortgage Corporation**
**PO Box 5449**
**Mount Laurel, NJ 08054**

_____ [Space Above This Line For Recording Data] _____
Original Recording Date: **January 16, 2004**                          Loan No: ████
Original Loan Amount: **$165,000.00**                          Investor Loan No ████

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **19th** day of **September, 2011**, between HENRY BELL JR. ("Borrower") and **PHH MORTGAGE CORPORATION, whose address is 1 Mortgage Way, Mount Laurel, NJ 08054** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated September 24, 2003 and recorded in **Book/Liber 10925, Page 00184, Instrument No: 000031275**, of the **Official Records (Name of Records) of HUDSON COUNTY, NJ (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**299 EGE AVENUE, JERSEY CITY, NJ 07304,**
(Property Address)
the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

**ASSIGNMENT FROM MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR FLEET NATIONAL BANK TO PHH MORTGAGE CORPORATION RECORDED 02/21/08, DOC 001003692, BK 01151, PG 00219.**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument                          Form 3179 1/01 (rev. 01/09)
**Loan No:** ████                                                                                  (page 1 of 5)
8300 03/11



follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **October 1, 2011**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$190,505.50**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.875%**, from **October 1, 2011**. Borrower promises to make monthly payments of principal and interest of U.S. **$902.90**, beginning on the **1st day** of **November, 2011**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **4.875%** will remain in effect until principal and interest are paid in full. If on **October 1, 2051** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider.  By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

   (b)    all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially

incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

(a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

6.  This Agreement modifies an obligation secured by an existing security instrument recorded in HUDSON County, NJ, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $128,127.05. The principal balance secured by the existing security instrument as

a result of this Agreement is $190,505.50, which amount represents the excess of the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
HENRY BELL JR. -Borrower

_____ [Space Below This Line For Acknowledgments] _____
State of New Jersey

County of BURLINGTON ss

I certify that on this ___30___ day of September _____, 20 11 , HENRY BELL JR., personally came before me and acknowledged under oath, to my satisfaction, the he(she) is named in and personally signed this document; and delivered this document as his (her) act and deed.

_____
NOTARY PUBLIC                              DENISE DIBLASIO
                                            NOTARY PUBLIC
My commission expires :_____     STATE OF NEW JERSEY
                                           My Commi██████████████

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument          Form 3179 1/01 (rev. 01/09)
Loan No:██████                                                                   (page 4 of 5)
8300 03/11

PHH MORTGAGE CORPORATION

By: _____ (Seal)
                                                    - Lender
Name:
Title:                              DOLORES LAURIA, ASST. V.P.

_____ [Space Below This Line For Acknowledgments] _____

State of New Jersey, County of Burlington

On ___1|6_____ , 20 12 , before me, Beth Lashley ,
a notary Public in and for said State, personally appeared

_____
                    DOLORES LAURIA, ASST. V.P.

_____

of the Corporation, personally known to me or proved to me on the basis of satisfactory evidence to be the
individual whose name is subscribed to the within instrument and acknowledged to me that they executed
the same in their capacity, and that by their signature on the instrument, the individual, or the person upon
behalf of which the individual acted, executed the instrument.

_____
Notary Public

Beth Lashley                              BETH LASHLEY
Notary Public of New Jersey               NOTARY PUBLIC OF NEW JERSEY
My Commission expires: __9|26|2016__      My Commission Expires 9/26/2016

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument      Form 3179 1/01 (rev. 01/09)
**Loan No:** ▇▇▇▇▇▇▇                                                         (page 5 of 5)
8300 03/11



## Exhibit "A"

Loan Number: █████████
Property Address: **299 EGE AVENUE, JERSEY CITY, NJ 07304**

Legal Description:
ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE CITY OF JERSEY
CITY, COUNTY OF HUDSON STATE OF NEW JERSEY.  BEING LOT(S) 68, BLOCK 1770, TAX
MAP OF THE CITY OF JERSEY CITY, COUNTY OF HUDSON.

FILED
20120130060001860
01/30/2012  08:20:54 AM
RELEASE
NUMBER OF PAGES : 6
JPISCOPO

Loan No: █████████

Exhibit A Legal Description Attachment

*Page 1 of 1*

*Collateral Address: 299 EGE AVE, JERSEY CITY NJ 07304-1001*

Loan Number: ████████ epared by Servicer: Seterus, Inc., NMLS ID Number: ██████ nvestor
Loan Number: ████████

*L790AO.1*

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 8th day of December, 2017, between BELL, HENRY ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated September 18, 2003, of the County Records of Hudson and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at
        299 EGE AVE, JERSEY CITY NJ 07304-1001

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of January 01, 2018, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $261,733.32 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  $19,301.11 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $242,432.21. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 3.000%, from December 01, 2017. Borrower promises to make monthly payments of principal and interest of U.S. $867.87, beginning on the 1st day of January, 2018, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of 3.000% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be December 01, 2057.

3.  Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4.  If Borrower makes a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

BELL, HENRY ████████
LOAN MODIFICATION AGREEMENT                                                                    Page 1 of 6

5. In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $881.23 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment. This includes private mortgage insurance (PMI) premiums on the Loan, if applicable, and may increase as a result of the New Principal Balance, which will result in a higher total monthly payment.

   (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing January 01, 2018.

   (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.

   (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.

   (d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

6. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

7. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph 1 above:

   (a) All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and


BELL, HENRY
LOAN MODIFICATION AGREEMENT                                                    Page 2 of 6

    (b) All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider,
where applicable, or other instrument or document that is affixed to, wholly or partially
incorporated into, or is part of, the Note or Security Instrument and that contains any such
terms and provisions as those referred to in (a) above.

8. Borrower understands and agrees that:
    (a) If Borrower has failed to make any payments as a precondition to this modification under a
workout plan or trial period plan, this modification will be null and void.
    (b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument
relating to default in the making of payments under the Security Instrument shall also apply
to default in the making of the modified payments hereunder.
    (c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument
shall be and remain in full force and effect, except as herein modified, and none of the
Borrower's obligations or liabilities under the Note and Security Instrument shall be
diminished or released by any provisions hereof, nor shall this Agreement in any way impair,
diminish, or affect any of Lender's rights under or remedies on the Note and Security
Instrument, whether such rights or remedies arise thereunder or by operation of law. Also,
all rights of recourse to which Lender is presently entitled against any property or any other
persons in any way obligated for, or liable on, the Note and Security Instrument are expressly
reserved by Lender.
    (d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in
whole or in part of the Note and Security Instrument.
    (e) All administration and processing costs incurred by Servicer in connection with this
Agreement, such as required notary fees, recordation fees, title costs, and property valuation
fees, shall be paid by the Servicer, unless otherwise stipulated.
    (f) Borrower will make and execute such other documents or papers as may be necessary or
required to effectuate the terms and conditions of this Agreement which, if approved and
accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns
of the Borrower.
    (g) Borrower will execute other documents as may be reasonably necessary to correct an error
(including but not limited to any inaccuracy, mistake, or omission), if an error is detected
after execution of this Agreement. In the event an error is detected, a corrected Agreement
will be provided to Borrower, and this Agreement will be void and of no legal effect, upon
notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms
of the original Note and Security Instrument shall continue in full force and effect, and such
terms will not be modified by this Agreement.

9. Borrower will pay to Lender, on the day payments are due under the Loan Documents as
amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for
payment of amounts due for: (a) taxes and assessments and other items which can attain priority
over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground
rents on the Property, if any; (c) premiums for any and all insurance required by Lender under
the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in
lieu of the payment of mortgage insurance premiums, in accordance with the Loan Documents;
and (e) any community association dues, fees, and assessments that Lender requires to be
escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all
notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for



Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount, and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items, or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured), or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.



10. Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

11. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining financial assistance, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

In Witness Whereof, the Servicer and I have executed this Agreement.

_____                    _____

Seterus, Inc.   Authorized Signer                                                      Date

BELL, HENRY                                                                          Date
PO BOX 15536
JERSEY CITY, NJ 07305

This document was prepared by: Caliber Home Loans Inc.

## LOAN MODIFICATION AGREEMENT
## 5 YEAR INTEREST ONLY WITH STEP

**Important Information: Your Interest-Only Modification includes risks not found in other types of loan modifications.**

**To the Borrower: This Agreement contains changes in terms which affect your Loan secured by the Property identified below. This is a legal obligation and you should read and understand the terms of this Agreement before you sign it.**

**This Agreement (the "Agreement") is dated as of May 16, 2019, but effective as of the Modification Effective Date defined herein, by and between HENRY BELL JR (collectively, the "Borrower" or "you") and Caliber Home Loans, Inc. (the "Servicer"), on behalf of the current owner of your loan (the "Lender").**

### RECITALS:

A.    Borrower has a mortgage loan, account number ███████ (the "Loan"). This loan is secured by property commonly referred to as 299 EGE AVE, JERSEY CITY, NJ 07304 (the "Property").

B.    Borrower signed the following documents in connection with the Loan:

- Note dated September 24, 2003 in the original amount of $165,000.00 (the "Note").

- Mortgage, Security Deed, or Deed of Trust on the Property, recorded in real property records of Hudson County, NJ (the "Security Instrument"), with an original stated maturity date of December 1, 2057.

- The Note and the Security Instrument, together with all documents executed in relation to the Note and the Security Instrument, and in addition to any loan modification previously entered into by Borrower, are called the "Loan Documents".

C.    Borrower has provided information to Servicer, and Borrower and Servicer want to modify the terms of the Note and Security Instrument.

In consideration of the foregoing Recitals and the terms, conditions, representations and warranties, and mutual covenants and agreements herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Servicer (collectively, the "Parties"), mutually agree as follows:

**1.    Conditions to Effectiveness of Agreement.**

   a.    This Agreement will only be effective after Borrower signs and returns a signed original of this Agreement to Servicer on or before June 5, 2019.

   b.    Lender will not be obligated or bound to make any modification of the Loan Documents if the Borrower fails to meet any one of the requirements under this Agreement.

**2.    Modification of the Loan Documents**

If the conditions of this Agreement are satisfied, then your Loan is modified as follows:

Modification Period: The payments on your loan will be modified from the effective date of the modification, which will be June 1, 2019 (the "Modification Effective Date"). You will pay the initial modified amount from the Modification Effective date until June 1, 2024 ("Initial Modification Period"). At the end of the Initial Modification Period, and beginning at Year 6, your interest rate and corresponding monthly principal and interest payment will increase in accordance with the table below until Year 2025, when your interest rate will remain fixed for the balance of the term of your Loan.

Term Extension: The term of the Note has been extended and the new maturity date of the Loan will be June 1, 2059.

Combined Principal Balance: On the Modification Effective Date, the Combined Principal Balance payable under the note is $276,867.69 (the "Combined Principal Balance"). This amount consists of unpaid and deferred interest, previously deferred amounts, fees, charges, escrow advances, and other costs, but excluding unpaid late charges, less any amounts paid to Servicer but not previously credited to my loan. I understand that by agreeing to add these amounts to the outstanding principal balance, the added amounts accrue interest based on the interest rate in effect under this Agreement unless those amounts are either deferred as non-interest bearing or forgiven as specified in this Agreement.

Interest Bearing Principal Balance: The Combined Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $276,867.69.

Modified Monthly Payment Amount: You promise to make modified monthly INTEREST-ONLY payments in an amount set forth in the table below for a 60 month period beginning with the first interest-only payment due on July 1, 2019 and ending with the last interest-only payment due on June 1, 2024 (the "Interest-Only Period"). During the 60 month Interest-Only Period, the total modified monthly payment amount will include monthly interest-only payments and may include any monthly escrow payments (to the extent Servicer will pay escrowed amounts) and monthly payments for Ancillary Amounts, as identified below.

At the end of the Interest-Only Period, Borrower promises to make monthly PRINCIPAL-AND-INTEREST payments beginning with the first payment due after June 1, 2024 and ending on the Maturity Date (the "Principal-and-Interest Period"). During the Principal-and-Interest Period, the total monthly payment amount will include monthly principal-and-interest payments and may include any monthly escrow payments (to the extent Servicer will pay escrowed amounts).

Modified Interest Rate: Interest will be charged on the Modified Unpaid Principal Balance at a rate of 3% (the "Modified Interest Rate") beginning on Modification Effective Date. You will make modified monthly interest only payments based on the Modified Interest Rate as applied to the Modified Unpaid Principal Balance beginning on the First Modification Payment Date and ending on the end of the Initial Modification Period.

IMPORTANT INFORMATION RELATING TO YOUR INTEREST-ONLY LOAN MODIFICATION:
An interest-only modification allows you to pay only the interest on the Unpaid Principal Balance during the Interest-Only Period. During the Interest-Only Period, your monthly payments will not reduce the amount of principal you owe on your Loan. In other words, at the end of the Interest-Only Period, you will owe the same amount of principal that you did at the start of the Interest-Only Period unless you make additional payments to reduce the amount you owe during the Interest-Only Period. Depending upon other modifications to your Loan, your monthly payment after the Interest-Only Period will likely significantly increase and may be higher than the monthly payment due under the Loan Documents.

---

LOAN MODIFICATION AGREEMENT
5 YEAR INTEREST ONLY WITH STEP



Summary of the Initial Modification Period Payments:

| | |
|---|---|
| Modified Unpaid Principal Balance: | $276,867.69 |
| Modified Interest Rate: | 3% |
| Modified Monthly Interest Only Payment: | $692.17 |
| Monthly Escrow Payment (Taxes and Insurance)*: | $321.02 |
| Total Modified Monthly Payment: | $1,013.19 |
| First Modification Payment Date: | July 1, 2019 |
| Maturity Date: | June 1, 2059 |

Interest Rate Change Table

| Years | Interest Rate | Interest Rate Change Date | Monthly Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 5 | 3% | 06/01/2019 | $692.17 Interest Only | $321.02 May adjust periodically | $1,013.19 May adjust periodically | 07/01/2019 | 60 |
| 1 | 4.00000% | 06/01/2024 | $1,225.90 Principal and Interest | May adjust periodically | May adjust periodically | 07/01/2024 | 12 |
| 34 | 4.10000% | 06/01/2025 | $1,242.21 Principal and Interest | May adjust periodically | May adjust periodically | 07/01/2025 | 408 |

*Your Monthly Escrow Payment is an amount calculated in accordance with the Loan Documents, and Federal and State law. This amount may change from time to time if escrow items (taxes and/or insurance) increase or decrease.

3.   **Events of Default.** A default under the terms of this Agreement constitutes a default under the terms of the Loan Documents. All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

4.   **Additional Covenants and Agreements.**

The Parties further agree to and acknowledge each of the following:

A.   All persons who signed the Loan Documents must sign this Agreement in person or by an authorized representative, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) Servicer has waived this requirement in writing. Borrower, by signing this Agreement, will be presumed to have read this Agreement and understand the terms of this Agreement.

B.   Borrower certifies that all documents and information Borrower has provided to Servicer in connection with this Agreement are true and correct, and Borrower agrees to be bound by the representations in the Loss Mitigation Application.

LOAN MODIFICATION AGREEMENT
5 YEAR INTEREST ONLY WITH STEP



CapMod
Revised 01/19
Page 3 of 5

I acknowledge that Servicer may be required to report any principal forgiveness to the IRS and that any tax liability arising out of that forgiveness shall be my responsibility. I further acknowledge that Servicer has recommended that I consult my own tax advisor to determine how this forgiveness impact my personal situation.

C.     This Agreement supersedes the terms of any modification, forbearance, trial period plan or other workout plan that Borrower may have or have had in the past with Servicer or any prior servicer.

D.     Except as specifically modified by this Agreement, the terms of the Loan Documents remain in full force and effect and are duly valid, binding agreements, enforceable in accordance with their terms. This Agreement does not replace or release any terms in the Loan Documents, except as specifically modified by this Agreement. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.

E.     Borrower may not assign and no person may assume Borrower's rights under this Agreement or the Loan Documents without the prior written consent of the Servicer.

F.     If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

       If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

G.     If Servicer makes advances for payment of taxes or insurance, accrues interest, or posts late or other fees or expenses to the Loan, each of which is permissible under the Loan Documents to add to amounts outstanding under the Note, between the date Servicer generates this Agreement and the date this Agreement is processed, then these amounts will become Deferred Amounts under the Loan Documents. Any addition of Deferred Amounts or offset of advances pursuant to this section will be reflected on Borrower's periodic statement. Deferred Amounts do not accrue interest. The Deferred Amounts will be due at the earlier of payment in full of the Note, acceleration, or the Maturity Date. If you sell the Property or refinance the Loan, you will be required to pay this Deferred Amount in addition to any other amounts due at that time. Otherwise, these amounts are due on the Maturity Date and are required to be paid at or before that time. This means that if you make all the payments required by this Agreement, you will still owe the Deferred Amount to Servicer. The Deferred Amount may result in a significantly higher monthly payment on the Maturity Date.

H.     Borrower will execute such other documents or papers as may be reasonably necessary or required to either (i) consummate the terms and conditions of this Agreement, or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided to Borrower for Borrower's signature. At the option of the Lender, if Borrower elects not to sign any such corrective documentation, the terms of the operative Loan Documents will continue in full force and effect, and such terms will not be modified by this Agreement.

I. This Agreement constitutes notice that any waiver by Servicer as to payment of taxes, insurance and other escrow items has been revoked. Borrower agrees and understands that Borrower will be required to pay certain escrow amounts as required by Servicer in accordance with applicable Federal and state law.

**5.  No Waiver.**

Except as specifically provided herein, the Security Instrument shall remain unaltered and in full force and effect and is hereby ratified and confirmed by the Parties hereto. This Agreement shall not constitute a novation of the Security Instrument. The execution, delivery and effectiveness of this Agreement shall not, except as expressly provided herein, operate as a waiver of any right, power or remedy of any party under the Security Instrument.

**THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge: If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect debt but is sent for informational purposes only.**

Whereof, Servicer and Borrower have executed this Modification Agreement as of the dates indicated below

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement:

**Borrower**

HENRY BELL JR                          6/2/19
_____                _____
**HENRY BELL JR**                       **Date**

**Lender**

Caliber Home Loans, Inc.

JUN 07 2019
_____                _____
                                        **Date**

Account Number: ██████████

